United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br>　　　　Plaintiff,<br>　　v.<br>JOSE LUIS ARTEAGA-CENTENO,<br>　　　　Defendant. | Case No. 18-cr-00332-CRB-1<br><br>**ORDER GRANTING MOTION TO DISMISS THE INDICTMENT** |

Defendant Jose-Luis Arteaga-Centeno ("Arteaga") moves to dismiss his indictment for illegal reentry after deportation in violation of 8 U.S.C. § 1326. Mot. to Dismiss (Dkt. 8). The thrust of his argument is that the recent Supreme Court decision Pereira v. Sessions, 138 S. Ct. 2105 (2018), renders the Notice to Appear ("NTA") in his underlying deportation invalid, and thus his prior deportations cannot support this current charge. Mot. at 1.

Arteaga's NTA was invalid under Pereira. In consequence, there was no jurisdiction over his original removal order, and there has thus not been a previous "removal" for the purposes of § 1326(a). The Court thus GRANTS the Motion to Dismiss the Indictment.

**I.　BACKGROUND**

Arteaga, a native of Honduras, first entered the United States without inspection in 1996. Blank Dec'l. (Dkt. 9) ¶ 2; Mot. at 1. In 1997, he was convicted of possession of crack cocaine for sale in California state court. Blank Dec'l. ¶ 2; id. Exh. A (Dkt. 9-1); see also Cal. Health & Safety Code § 11351.5. Thereafter, he entered removal proceedings. Blank Dec'l. ¶ 2; id. Exh. A. The government issued an NTA on April 15, 1997. Mot. at

2.[1] That NTA contained blank spaces for the date and time of the hearing, but those were left blank. Blank Dec'l Exh. A; Mot. at 2. Arteaga then appeared before an immigration judge ("IJ"). Blank Dec'l ¶ 6. The IJ ordered Arteaga removed and he was removed to Honduras on April 25, 1997. Id.

Arteaga then re-entered the United States and was again removed in 1998, 2001, 2006, and 2012. Id. Each of these subsequent removals was pursuant to a reinstatement of Mr. Arteaga's original 1997 removal order. Id.; Mot. at 4; Opp. at 6-7.[2]

Arteaga was indicted in the instant matter on July 24, 2018, for one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a) & (b)(2). Indictment (Dkt. 1). Arteaga now urges this Court to dismiss the indictment. Dkt. 10.

## II. DISCUSSION

### A. Jurisdictional Invalidity of the NTA

Pursuant to the regulations that implement the Immigration and Nationality Act, 8 U.S.C. § 1101 et. seq., ("INA") "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). A "[c]harging document means the written instrument which initiates a proceeding before an Immigration Judge" and must "include a Notice to Appear." Id. § 1003.13; see also Gonzalez-Caraveo v. Sessions, 882 F.3d 885, 890 (9th Cir. 2018); Mot. at 6.

"Notice to Appear" is defined, as relevant here, in two places, one statutory and one regulatory. First, 8 U.S.C. § 1229(a) defines it to include "[t]he time and place at which the

---

[1] There appears to be an error in the Blank Declaration—it repeatedly states that the NTA was issued in 2017, see Blank Dec'l ¶ 2, but the attached NTA, and the parties' analysis of it, indicate that the NTA was issued in 1997. The Court thus understands that the NTA was issued in 1997.
[2] The Government also contends that Arteaga was also removed in October 1997 under the name "Carlos Dorre-Rodriguez," based on fingerprint matching and similarities in background information. Opp. at 5; Opp. Exhs. 10, 11. The NTA underlying this deportation order likewise contained blanks for time and date. Opp. Exh. 11-1.

2

proceedings will be held." Second, 8 C.F.R. § 1003.15 sets out the "[c]ontents of the order to show cause and notice to appear and notification of change of address." It first defines an Order to Show Cause, then states "[t]he Order to Show Cause and Notice to Appear must also include" a list of things. Id. That list does not include the time and date of the hearing. Id.

The crux of Arteaga's case is that the NTA he received in 1997 was invalid under Pereira v. Sessions, 138 S. Ct. 2105 (2018); Mot. at 6. There, the Court addressed the requirements of an NTA in the context of the "stop-time" rule. Id. at 2109. Under the Immigration and Nationality Act, "[n]onpermanent residents . . . who are subject to removal proceedings and have accrued 10 years of continuous physical presence in the United States, may be eligible for a form of discretionary relief known as cancellation of removal." Id. (citing 8 U.S.C. § 1229b(b)(1)). The stop-time rule defines the scope of a "period of continuous physical presence" such that it is "deemed to end . . . when the alien is served a notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1)(A); see also Pereira, 138 S. Ct. at 2109.

Section 1229(a), which sets out the requirements of an NTA, states that the "Government shall serve noncitizens in removal proceedings with 'written notice (in this section referred to as a 'notice to appear') . . . specifying' several required pieces of information, including '[t]he time and place at which the [removal] proceedings will be held.'" Pereira, 138 S. Ct. at 2109-10 (quoting 8 U.S.C. § 1229(a)(1)(G)(i) (alterations in original)).

The question the Court confronted in Pereira was: "If the Government serves a noncitizen with a document that is labeled "notice to appear," but the document fails to specify either the time or place of the removal proceedings, does it trigger the stop-time rule?" Id. at 2110. The Court held that:

> The answer is as obvious as it seems: No. A notice that does not inform a noncitizen when and where to appear for removal proceedings is not a "notice to appear under section 1229(a)" and therefore does not trigger the stop-time rule. The plain text, the statutory context, and common sense all lead inescapably

3

and unambiguously to that conclusion.

Id.

The Government argues here that § 1003.15 sets out an alternative definition of an NTA that permits an NTA that lacks time and date information to vest the IJ with jurisdiction, even if that NTA would not trigger the stop-time rule. Opp. at 13-14. These different requirements, it reasons, are consistent with Pereira's recognition that an NTA can have more than "one essential function," Pereira, 135 S. Ct. at 2115 n.7; Surreply at 5-6 (Dkt. 20). So, in its view, the IJ had jurisdiction over Arteaga because the NTA complied with the requirements of § 1003.15, even though the NTA did not meet the requirements of § 1229(a). Arteaga responds that this argument ignores the fact that Pereira directly addressed a regulation that purported to define NTA in a particular context to not require time and date requirements—and struck down that provision as inconsistent with the statute. 138 S. Ct. at 2110; Reply at 10-11. Arteaga contends that the Government's argument here is simply a redux of the rejected argument in Pereira: A regulation interpreting the definition of "Notice to Appear" cannot remove a statutory requirement of that definition. Reply at 10-11.

Arteaga is correct. Like the Petitioner in Pereira, Arteaga's 1997 NTA[3] did not contain a time or date; those spaces were left blank. Mot. at 2. The NTA was thus, under Pereira, not in compliance with the requirements of § 1229(a).

Further, this Court is unpersuaded by the Government's contention that the requirements of an NTA are different for jurisdictional purposes than they are elsewhere in the statute. See Opp. at 13-14. As the Court observed in Pereira, "it is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." Pereira, 138 S. Ct. at 2115 (quoting Taniguchi v. Kan

---

[3] When this opinion refers to the 1997 NTA, it refers to the NTA issued on April 15, 1997. The Court expresses no view on whether the NTA issued in the proceeding against Carlos Dorre-Rodriguez that culminated in the October 1997 deportation was or was not a deportation of Arteaga. Because that NTA also lacked time and date information, the following analysis would apply with equal force to an indictment based on that NTA.

1  Pacific Saipan, Ltd., 566 U.S. 560, 571 (2012)). Pereira determined that a "Notice to
2  Appear" for purposes of the INA must include time and date information. Id. at 2110.
3  Indeed, the Court deemed the time and date information "definitional" and held that "the
4  omission of time-and-place information is not, as the dissent asserts, some trivial,
5  ministerial defect . . . . Failing to specify integral information like the time and place of
6  removal proceedings unquestionably would deprive [the NTA] of its essential character."
7  Id. at 2116-17. And so the Court held that a regulation that authorized NTAs that lacked
8  that information for purposes of the stop-time rule to be invalid, despite the existence of a
9  regulation that purported to redefine an NTA in that particular context. Id. So too here: an
10 NTA is defined by statute and so, as in Pereira, the existence of a regulation that purports
11 to redefine NTA in a particular context—here, when jurisdiction vests, 8 C.F.R.
12 § 1003.14(a)—does not alter the plain meaning of the statute. See Pereira, 138 S. Ct. at
13 2110. And the Government offers no explanation for why, despite the Court's
14 admonishment that "identical words used in different parts of the same act are intended to
15 have the same meaning," id. at 2115 (quoting Taniguchi, 566 U.S. at 571), an NTA should
16 be given a different definition as to jurisdiction than it has in other places in the INA and
17 its implementing regulations. See generally Opp.

18 Nor did the Court in Pereira purport to limit its holding to the context of the stop-
19 time rule. Instead, it held that "when the term 'notice to appear' is used elsewhere in the
20 statutory section, including as the trigger for the stop-time rule, it carries with it the
21 substantive time-and-place criteria required by § 1229(a)." Id. at 2116 (emphasis added). It
22 is thus clear that the Court did not intend its holding to be read to apply only to the
23 definition of an NTA in the context of the stop-time rule, but rather to apply to the
24 definition of NTA in the context of the statute overall.

25 For these reasons, the reasoning in Pereira applies with equal force here. There no
26 reason to permit § 1003.15 to modify the definition of NTA set out in the statute—a
27 definition that Pereira found "clear and unambiguous." Id. at 2113. In consequence,
28 Arteaga's 1997 NTA was invalid because it lacked time and date information. And thus,

because an IJ's jurisdiction vests only when a charging document—which must include an NTA—is filed, the deportation order was jurisdictionally invalid. See 8 C.F.R. §§ 1003.13, 1003.14(a).

## A. Viability of an Invalid NTA

The question then becomes what the impact of a jurisdictionally-invalid NTA is on a later indictment for illegal reentry. Arteaga argues that this ends the case, because since the removal was jurisdictionally invalid, it was void. Mot. at 13-14; see Wilson v. Carr, 41 F.2d 704, 706 (9th Cir. 1930); cf. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2004) ("[T]he removal order serves as a predicate element of his conviction."). The Government contends that Arteaga must additionally comply with the requirements of 8 U.S.C. § 1326(d), which governs collateral challenges to removal orders in criminal proceedings for illegal reentry.[4]

Arteaga relies primarily on Wilson, in which the appellant objected to his deportation on the grounds that he had not been convicted of a "crime of moral turpitude" punished by a period of at least one year imprisonment—the relevant requirement for deportation in that case—because the statute under which he had been convicted permitted those convicted under it to set aside their guilty verdict if they successfully completed their probation. Wilson, 41 F.2d at 705-06. In the appellant's case, "no sentence ha[d] been pronounced for the crime charged, and no sentence [would] follow in the future, provided he fulfill[ed] all the terms and conditions of the probation." Id. at 706. The judge in his underlying case nevertheless sentenced him to a period of incarceration of one year in county jail. Id. The Ninth Circuit concluded that judge had lacked the jurisdiction to do so,

---

[4] Pursuant to 8 U.S.C. § 1326(d), a defendant must "demonstrates that (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); see also United States v. Ochoa, 861 F.3d 1010, 1019 (9th Cir. 2017). This third requirement, fundamental unfairness, requires a showing that there was (1) a violation of his due process rights from the defects in the deportation proceeding, and (2) actual prejudice. United States v. Vega-Ortiz, 822 F.3d 1031, 1034 (9th Cir. 2016).

because the criminal statute "confer[ed] no express authority upon the court to again commit him[.]" Id. The Ninth Circuit then held that "if the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it. For these reasons, we are of opinion [sic] that [this] ground of deportation cannot be sustained." Id. at 706.

The Government does not address Wilson, but rather urges that "the Ninth Circuit has rejected the argument that a flawed NTA renders an entire proceeding void," and thus that, even if the NTA were invalid, that would not render the deportation invalid. Opp. at 19. It relies on two pre-Pereira Ninth Circuit cases, Kohli v. Gonzales, 473 F.3d 1061 (9th Cir. 2007), and Lazaro v. Mukasey, 527 F.3d 977 (9th Cir. 2008); Opp. at 14.[5] But neither addresses a situation like this one in which a noncitizen was removed pursuant to a jurisdictionally-void NTA. Rather, Kohli addressed the impact of an NTA that did not include a legible name and title of the officer who issued the NTA, which is not a requirement under either the statute or regulation. 473 F.3d at 1067-68 ("Kohli has not shown that any statute or regulation requires the inclusion of the name and title of the issuing officer on the NTA, it follows that she has not shown that the fact that the name and title on her NTA are illegible constitutes a violation of a regulation."). Similarly, in Lazaro, the noncitizen challenged his NTA on the ground that it did not meet the requirement that it include the "charges against the alien and the statutory provisions alleged to have been violated," because the NTA did not include the specific subsection under which Lazaro was charged. 527 F.3d at 980 (quoting 8 U.S.C. § 1229(a)(1)(D)). The Ninth Circuit held that:

> [A]lthough the NTA failed fully to specify 'the statutory provisions alleged to be violated,' by not including any

---

[5] The Government also cites to a series of cases holding that flaws in the indictment do not render a district court without jurisdiction to adjudicate the case. See United States v. Cotton, 535 U.S. 625, 630–31 (2002); United States v. Velasco-Medina, 305 F.3d 839, 845-46 (9th Cir. 2002); Opp. at 15. These cases are irrelevant to the case at bar, as the question is not whether this Court has jurisdiction over the indictment, but rather whether the IJ had jurisdiction over the removal proceedings in 1997.

7

> aggravated felony subsections, we conclude that the Immigration Court did not lack jurisdiction as a result. Lazaro's charging document satisfied, albeit minimally, § 1229(a)(1)(D)'s requirements by specifying that Lazaro was removable as an aggravated felon pursuant to identified provisions of the Immigration and Nationality Act, as well as his underlying criminal conviction.

Id. at 980 (quoting 8 U.S.C. § 1229(a)(1)(D)) (emphasis in original). In neither case did the Ninth Circuit conclude that the underlying removal proceeding failed to comply with the statutory requirements of an NTA such that the immigration court lacked jurisdiction. See Kohli, 473 F.3d at 1065-67; Lazaro, 527 F.3d at 979-80. And so neither supports the Government's position that an invalid NTA may nevertheless support a valid deportation.[6]

The Government next argues that, regardless of the validity of Arteaga's deportation, a collateral attack on an underlying deportation order requires several showings; an improper order is not alone sufficient. See 8 U.S.C. § 1326(d); Opp. at 15-21. And, it urges, § 1326(d) makes no distinction between jurisdictionally-invalid orders and orders that are invalid for any other reason. See Opp. at 15-21.

This argument, however, again ignores the Ninth Circuit's conclusion in Wilson that "[i]f the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it." Wilson, 41 F.2d at 706. Section 1326(a), which sets out the elements of the crime of illegal reentry, requires, relevantly, that the alien has been removed. Id. at § 1326(a)(1). If the underlying removal was jurisdictionally void, then there has been, for the purposes of § 1326(a), no removal at all. See Noriega-Lopez v. Ashcroft, 335 F.3d 874, 884 (9th Cir. 2003) ("[T]he BIA's lack of authority to enter Noriega-Lopez's removal order renders that component of his proceedings in essence, a legal nullity." (Internal citation omitted)).[7] Reading § 1326(d) to apply to jurisdictionally-

---

[6] The Government also relies on Popa v. Holder, 571 F.3d 890 (9th Cir. 2009). Opp. at 14. Popa endorsed the precise process that Periera rejected: "(1) sending a Notice to Appear in which the government states that the date and time of the hearing will be provided at a later time and (2) later sending notice of the hearing with the date and time of the hearing." Popa, 571 F.3d at 892. The Government fails to explain why Periera's rejection of this precise holding does not overrule this portion of Popa.
[7] In addition, the Supreme Court has rejected the argument that a conviction under § 1326(a) must be based on a lawful removal order. United States v. Mendoza-Lopez, 481 U.S. 828, 834 (1987).

invalid orders, as the Government suggests, is thus precluded by the Ninth Circuit's requirement that courts must "disregard" invalid orders and that such orders are "legal nullit[ies]". Wilson, 41 F.2d at 706; Noriega-Lopez, 335 F.3d at 884.[8] And so Arteaga's claim is not a "collateral challenge" to his deportation order, because there is no removal order to be collaterally attacked.

Arteaga's indictment for illegal reentry, therefore, must be dismissed because Arteaga has not "been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding," 8 U.S.C. § 1326(a)(1).

### III. CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Indictment is GRANTED.

**IT IS SO ORDERED.**

Dated: January 8, 2019

CHARLES R. BREYER
United States District Judge

---

Following Mendoza-Lopez, the Ninth Circuit held that "the lawfulness of the prior deportation is not an element of the offense under § 1326." United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc). But neither Mendoza-Lopez or Alvarado-Delgado addressed an order that was void for jurisdictional reasons. See Alvarado-Delgado, 481 U.S. at 830-31; Mendoza-Lopez, 481 U.S. at 834. And so the Court does not see this line of cases as relevant to the question before it: whether a jurisdictionally-invalid removal order is a removal order at all.

[8] Nor do Arteaga's subsequent deportations alter that conclusion because these later deportations were simply reinstatements of the original jurisdictionally-invalid order. See Blank Dec'l ¶ 6; Mot. at 4. And so they do not represent alternative bases for a § 1326 conviction.