IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| USA,<br><br>        Plaintiff,<br><br>   v.<br><br>ARTEAGA-CENTENO,<br><br>        Defendant. | Case No. 18-cr-00332-CRB-1<br><br>**ORDER ON UNITED STATES'**<br>**RULE 37 MOTION** |

At a hearing on February 1, 2019, the Government orally moved for reconsideration of this Court's Order Granting Defendant's Motion to Dismiss. Dkt. 47; see Order (Dkt. 35). However, the Government agreed with the Defendant that because the Government had already filed a Notice of Appeal as to that Order, see Notice of Appeal (Dkt. 40), this Court lacks jurisdiction over such a motion. Def. Res. (Dkt. 46). The Government thus also seeks an order under Federal Rule of Criminal Procedure 37(a). See Dkt. 47.

Under the Ninth Circuit's recent opinion in Karingithi v. Whitaker, 2019 WL 333335 (9th Cir. Jan. 28, 2019), a Notice to Appear ("NTA") vests an Immigration Judge ("IJ") with jurisdiction over a noncitizen's removal proceeding when that Notice satisfies the regulatory requirements—which do not require that the Notice include the time and date of the noncitizen's removal proceedings. Id. at *1 (citing 8 C.F.R. § 1003.15(b)). This Court's previous Order Granted Defendant's Motion to Dismiss the Indictment because his underlying NTA lacked time and date information, and thus this Court concluded that jurisdiction had not vested with the IJ. Order at 2-9. Under Karingithi, that ruling is incorrect.

Because Defendant's only other argument for dismissal of his indictment for

unlawful reentry under 8 U.S.C. § 1326 is a "collateral attack on [his] underlying deportation order," id. § 1326(d); see also Mot. to Dismiss (Dkt. 8), which this Court did not reach, Order at 6-7, the Court finds that the Government's Rule 37 Motion "raises a substantial issue," Fed. R. Crim. P. 37(a)(3); Dkt. 47.

## I.    BACKGROUND

Defendant Jose-Luis Arteaga-Centeno ("Arteaga") moved to dismiss his indictment for illegal reentry after deportation in violation of 8 U.S.C. § 1326. Mot. to Dismiss (Dkt. 8). On January 8, 2019, this Court granted that motion on the ground that the NTA in Arteaga's underlying removal proceedings was jurisdictionally invalid under Pereira v. Sessions, 138 S. Ct. 2105 (2018). Order. This Court reasoned that because the IJ lacked jurisdiction in that underlying proceeding, there had "thus not been a previous 'removal' for the purposes of § 1326(a)." Order at 1. The Court thus dismissed Arteaga's one-count indictment. Id.; see also Indictment (Dkt. 1). The Government has since appealed this decision. Notice of Appeal.

Since this Court issued dismissed Arteaga's indictment, the Ninth Circuit has addressed the impact of Pereira on the question of an IJ's jurisdiction. Karingithi v. Whitaker, 2019 WL 333335 (9th Cir. Jan. 28, 2019). On the basis of this newly-decided case, the Government now seeks leave to file a Motion for Reconsideration of this Court's Order Granting Motion to Dismiss the Indictment. Dkts. 45, 47. The Court granted leave. Id. However, as Defendant argues, and the Government does not dispute, because the Government has filed a Notice of Appeal, Dkt. 40, this Court lacks jurisdiction over that motion. See Def. Resp. to Gov. Opp. at 2-3 (Dkt. 46). The Government thus seeks an Order under Rule 37(a) as to what this Court would do should the Government file a Motion for Reconsideration. See Dkt. 47.

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 37(a) states that "[i]f a timely motion is made

1   for relief that the court lacks authority to grant because of an appeal that has been docketed

2   and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3)

3   state either that it would grant the motion if the court of appeals remands for that purpose

4   or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a).

5       Although the Federal Rules of Criminal Procedure do not explicitly contemplate

6   motions for reconsideration, "numerous circuit courts have held that motions for

7   reconsideration may be filed in criminal cases." United States v. Mendez, 2008 WL

8   2561962, at *1 (C.D. Cal. June 25, 2008) (quoting United States v. Hector, 368 F.Supp.2d

9   1060, 1063 (C.D.Cal.2005), rev'd on other grounds, 474 F.3d 1150 (9th Cir. 2007));

10  United States v. Martin, 226 F.3d 1042, 1047 (9th Cir. 2000). Such motions "are governed

11  by the rules that govern equivalent motions in civil proceedings." Mendez, 2008 WL

12  2561962, at *2 (citing Hector, 368 F.Supp.2d at 1063). The Government's Motion must

13  thus be evaluated under Federal Rule of Civil Procedure 60. See Phelps v. Alameida, 569

14  F.3d 1120, 1133 (9th Cir. 2009) (holding that motions for reconsideration brought under

15  Rule 60(b) may be predicated on changes in the law underlying an earlier judgment).

16

## III.   DISCUSSION

18      In granting the Motion to Dismiss the Indictment, this Court determined that the IJ

19  lacked jurisdiction over Arteaga's immigration proceedings, and thus there was no

20  jurisdictionally-valid removal order that could sustain his indictment under 8 U.S.C.

21  § 1326. The Government contends that, in light of Karingithi, this determination was

22  incorrect; the IJ did have jurisdiction over Arteaga's immigration proceedings. Gov. Resp.

23  to Mot. (Dkt. 45) at 2-3. The Court agrees.

24      In the immigration context, "[j]urisdiction vests, and proceedings before an

25  Immigration Judge commence, when a charging document is filed with the Immigration

26  Court by the Service." 8 C.F.R. § 1003.14(a). A "[c]harging document means the written

27  instrument which initiates a proceeding before an Immigration Judge" and must "include a

28  Notice to Appear." Id. § 1003.13.

In granting the Motion to Dismiss the Indictment, this Court relied on <u>Pereira v. Sessions</u>, 138 S. Ct. 2105 (2018). In <u>Pereira</u>, the Supreme Court held that in the context of the "stop-time" rule,[1] an NTA must include time and date information, because the statutory provision that establishes the "stop-time" rule defines the scope of a "period of continuous physical presence" such that it is "deemed to end . . . when the alien is served a notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1)(A); <u>see also</u> <u>Pereira</u>, 138 S. Ct. at 2109. "Section 1229(a), in turn, provides that the Government shall serve noncitizens in removal proceedings with 'written notice (in this section referred to as a 'notice to appear') . . . specifying' several required pieces of information, including '[t]he time and place at which the [removal] proceedings will be held.'" <u>Id.</u> at 2019-2110 (quoting § 1229(a)(1)(G)(i) (alterations in original)).

Applying the holding of <u>Pereira</u> to this case, this Court reasoned that <u>Pereira</u>'s holding applied to the NTA Arteaga had received, because, like the Petitioner in <u>Pereira</u>, Arteaga's NTA did not include time and date information. Dkt. 35 at 3-6. So, Arteaga's NTA did not meet the statutory requirements of § 1229(a), and thus was invalid. <u>Id.</u> The Court reasoned that, in consequence, there was never an NTA that would have vested jurisdiction with the IJ in Arteaga's case, and thus there was no valid underlying removal over on which a § 1326 prosecution could proceed. <u>Id.</u> at 4-10.

The Government now contends that <u>Karingithi</u> renders this reasoning incorrect. <u>See</u> Gov. Res. (Dkt. 45). In <u>Karingithi</u>, the Ninth Circuit addressed an appeal by a Kenyan citizen who had overstayed her tourist visa. 2019 WL 333335, at *2. She entered removal proceedings and received an NTA that did not include time and date information. <u>Id.</u> She was provided that missing information later that day. <u>Id.</u> The IJ ordered her removed and the BIA affirmed. <u>Id.</u> She then appealed to the Ninth Circuit, arguing, as Arteaga has here,

---

[1] Under the Immigration and Nationality Act, "[n]onpermanent residents . . . who are subject to removal proceedings and have accrued 10 years of continuous physical presence in the United States, may be eligible for a form of discretionary relief known as cancellation of removal." <u>Pereira</u>, 138 S. Ct. at 2109 (citing 8 U.S.C. § 1229b(b)(1)). The "stop-time" rule defines when the period of "continuous physical presence in the United States" is deemed to end. <u>Id.</u> at 2110.

that "if a notice to appear does not state the time for her initial removal hearing, it is not only defective under § 1229(a)" in light of <u>Pereira</u>, "but also does not vest jurisdiction with the IJ." <u>Id.</u> at *3; <u>see also</u> <u>Pereira</u>, 138 S. Ct. 2105.

The Ninth Circuit rejected that argument. <u>Karingithi</u>, 2019 WL 333335 at *3-*4. The definition of NTA that appears in § 1229(a), the Ninth Circuit reasoned, "is silent as to the jurisdiction of the Immigration Court." <u>Id.</u> at *3. An IJ's jurisdiction is defined solely by regulation. <u>Id.</u> at *2-*3. And that regulation does not require that an NTA include time and date information, but, "rather, the regulation compels inclusion of such information 'where practicable.'" <u>Id.</u> at *2 (quoting 8 C.F.R. § 1003.18(b)). In addition, that regulation provides that "[i]f that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." 8 C.F.R. § 1003.18(b).

Given the differences in the NTA requirements between § 1229(a) and the regulations, and § 1229(a)'s silence as to jurisdiction, the Ninth Circuit concluded that the general presumption that the same word should be given the same meaning throughout a statute is "inapplicable here" because the jurisdictional regulations not only do "not include the time of the hearing, reading such a requirement into the regulations would render meaningless their command that such information need only be included 'where practicable.'" <u>Karingithi</u>, 2019 WL 333335, at *3 (quoting 8 C.F.R. § 1003.18(b)). The Court then held that "[t]he regulatory definition, not the one set forth in § 1229(a), governs the Immigration Court's jurisdiction. A notice to appear need not include time and date information to satisfy this standard. Karingithi's notice to appear met the regulatory requirements and therefore vested jurisdiction in the IJ." <u>Id.</u>

After reaching that decision, <u>id.</u>, the Ninth Circuit addressed a decision by the Board of Immigration Appeals ("BIA") and determined that that case was "consistent with [the Ninth Circuit's] analysis." <u>Id.</u> at *4 (citing <u>Matter of Bermudez-Cota</u>, 27 I. & N. Dec. 441, 443 (BIA 2018)). In <u>Bermudez-Cota</u>, the BIA determined, as the Ninth Circuit did in

United States District Court
Northern District of California

Karingithi, that the issuance of an NTA that lacks time and date information did not prevent an IJ from exercising jurisdiction over a noncitizen in removal proceedings. 27 I. & N. Dec. at 447. There, the noncitizen "was properly served with both a notice to appear and a subsequent notice of hearing. The latter specified the time and place of his hearing, and he attended this and subsequent hearings." Id. at 443. The BIA thus determined that Pereira's admonition that "[c]onveying . . . time-and-place information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings" was not a concern for Bermudez-Cota, because he "clearly was sufficiently informed to attend his hearings." Matter of Bermudez-Cota, 27 I. & N. Dec. 441, 443 (BIA 2018) (quoting Pereira, 138 S. Ct. at 2115 (first alteration in original)).

In explaining that its decision in Karingithi was "consistent" with Bermudez-Cota, the Ninth Circuit quoted the BIA as holding that "a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings . . . so long as a notice of hearing specifying this information is later sent to the alien." 2019 WL 333335 at *4 (quoting Bermudez-Cota, 27 I. & N. Dec. at 447)).

Arteaga now argues that Karingithi is inapposite to this case because the above-quoted language should be read to hold that, under Bermudez-Cota, and by extension Karingithi, jurisdiction may only vest upon the issuance of an NTA that does not include time and date information "so long as a notice of hearing specifying this information is later sent to the alien." 2019 WL 333335 at *4 (quoting Bermudez-Cota, 27 I. & N. Dec. at 447)); Def. Reply to Res. at 1-2 (Dkt. 46). And here, Arteaga "did not receive subsequent hearing notices with date and time" after he received an NTA that lacked that information. Def. Reply to Res. at 2 (quoting Gov. Supp. Opp. at 3). Thus, he urges, Karingithi does not control this case.

The Court is unpersuaded. Neither Bermudez-Cota nor Karingithi held that whether or not the issuance of an NTA vests an IJ with jurisdiction turns on whether there is a later-

issued notice informing the noncitizen of the time and date of the hearing. See generally Karingithi 2019 WL 333335; Bermudez-Cota, 27 I. & N. Dec. Indeed, Karingithi observed that § 1229(a) "is silent as to the jurisdiction of the Immigration Court." 2019 WL 333335, at *3. Put simply, Karingithi held that "the regulations, not § 1229(a), define when jurisdiction vests." 2019 WL 333335, at *3. So, when an NTA meets the regulatory requirements, jurisdiction vests. Id. And the regulations do not require that an NTA include time and date information. 8 C.F.R. § 1003.15(a); see also id. § 1003.14(a).

To be sure, § 1003.18(b) requires that if the NTA does not include time and date information, "the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." 8 C.F.R. § 1003.18(b). And so the statement in Bermudez-Cota that time and date information must be later provided to the noncitizen is a correct statement of law. See 27 I. & N. Dec. at 447; accord Karingithi, 2019 WL 333335 at *4; cf. Farhoud v. INS, 122 F.3d 794, 796 (9th Cir. 1997) (holding that noncitizens have Due Process rights which "include[] the right to a full and fair hearing as well as notice of that hearing."). But that requirement in § 1003.18(b) is not jurisdictional; and, again, the regulatory provision governing when jurisdiction vests does not contain a time and date requirement. 8 C.F.R. §§ 1003.13, 1003.14.[2]

In sum, then, Arteaga misreads Karingithi. Neither one can be read to hold that an IJ's jurisdiction only vests when a subsequent document is filed that provides time and date information after an NTA is issued that lacks that information. See generally Karingithi 2019 WL 333335. To the contrary, Karingithi held that "[a] notice to appear

---

[2] Nor is it clear, under Arteaga's view of the jurisdictional requirements, how or when jurisdiction would function in cases where a noncitizen is issued an original NTA lacking time and date information and only later receives the missing information. That is, on his view, if a noncitizen were issued an NTA without time and date information, would jurisdiction vest? Or would jurisdiction vest only later, when the noncitizen was provided with the time and date information? If the former, how would the Immigration Court know, at the time of issuance of the first NTA, whether or not it had jurisdiction? And if the latter, how could it be said—as Karingithi holds, 2019 WL 333335, at *3—that the first NTA vested the IJ with jurisdiction? Arteaga provides no explanation as to how either regime would comport with the regulatory requirements as explained by Karingithi. See Def. Reply to Res.

need not include time and date information to satisfy this standard. <u>Karingithi</u>'s notice to appear [which lacked time and date information] met the regulatory requirements and therefore vested jurisdiction in the IJ." 2019 WL 333335, at *3.

The Court turns now to the facts of this case. As in <u>Karingithi</u>, Arteaga was not provided with time and date information in his NTA. <u>See</u> Blank Dec. Exh. A (Dkt. 9-1). On that basis, the Court granted Arteaga's Motion to Dismiss the Indictment on the same grounds that Kaingithi advanced—that <u>Pereira</u>'s requirement that an NTA include time and date information for the purposes of the stop-time rule applied with equal force to an NTA that vests an IJ with jurisdiction. Order at 2-6; <u>Pereira</u>, 138 S. Ct. at 2113. That holding is flatly inconsistent with the Ninth Circuit's holding in <u>Karingithi</u>. 2019 WL 333335, at *3. This Court's Order granting the Motion to Dismiss is therefore incorrect.

Arteaga also contends that, even if his indictment should not have been dismissed on jurisdictional grounds, he nevertheless satisfies the factors of 8 U.S.C. § 1326(d), which governs collateral challenges to removal orders in criminal proceedings for illegal reentry. <u>See</u> Dkt. 47. Under § 1326(d), "an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

The Court's prior order granting his Motion to Dismiss the Indictment did not reach the § 1326(d) factors, and the parties' original briefing on that motion contains several vigorously-disputed points of material fact that may be relevant to this inquiry. <u>See</u> Mot. to Dismiss; Gov. Resp. to Mot. to Dismiss (Dkt. 10). In light of <u>Karingithi</u> and the parties' dispute as to the § 1326(d) factors—which this Court has not yet had occasion to consider, <u>see</u> Order at 6-7—the Court concludes that the Government's Motion for Reconsideration "raises a substantial issue," Fed. R. Crim. P. 37(a)(3), which would warrant reconsideration if the Ninth Circuit were to remand the case for that purpose.

## IV.    CONCLUSION

For the foregoing reasons, the Court holds that, if the Court of Appeals remanded this case for the purpose of deciding the Government's Motion for Reconsideration, the Court would determine that the Government's Motion raises a substantial issue because the Court's previous order dismissing Defendant's Indictment is incorrect under <u>Karingithi</u>, and the Court would instead have to apply the factors set out in 8 U.S.C. § 1326(d).


**IT IS SO ORDERED.**

Dated: February 4, 2019



CHARLES R. BREYER
United States District Judge