IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>    Plaintiff,<br><br>v.<br><br>ARTEAGA-CENTENO,<br><br>    Defendant. | Case No. 18-cr-00332-CRB-1<br><br>**ORDER DENYING MOTION TO STAY, GRANTING MOTION FOR RECONSIDERATION, VACATING ORDER GRANTING MOTION TO DISMISS INDICTMENT AND DENYING MOTION TO DISMISS INDICTMENT** |

What began as a procedurally, if not legally, straightforward motion to dismiss has become a knot of procedural and legal disputes as to whether this Court properly granted Defendant Jose-Luis Arteaga-Centeno's ("Arteaga") Motion to Dismiss Indictment (Dkt. 8) and whether this Court may even consider that question. For the reasons that follow, the Court now holds that, because of the intervening decision in Karingithi v. Whitaker, 913 F.3d 1158 (9th Cir. 2019), this Court's Order Granting Motion to Dismiss Indictment (Dkt. 35) was incorrectly decided. For the reasons that follow, the Court DENIES Arteaga's Motion to Stay and GRANTS the Government's Motion for Reconsideration. The Court therefore VACATES the Order Granting Motion to Dismiss Indictment and DENIES the Motion to Dismiss Indictment.

## I.  BACKGROUND

The Court has already twice recounted the legal and factual background of this case. See Order Granting Motion to Dismiss Indictment at 1-2; Order on U.S. Rule 37 Motion at 2 (Dkt. 48). Given the procedural complexity of this case, however, it is worth recounting

in some detail how the case reached its current state.

### A. Factual Background

Arteaga, a native of Honduras, first entered the United States without inspection in 1996. Blank Dec'l. (Dkt. 9) ¶ 2. In 1997, he was convicted of possession of crack cocaine for sale in California state court. Blank Dec'l. ¶ 2; id. Exh. A (Dkt. 9-1); see also Cal. Health & Safety Code § 11351.5. Thereafter, he entered removal proceedings. Blank Dec'l. ¶ 2; id. Exh. A. The government issued a Notice to Appear ("NTA") on April 15, 1997; that NTA contained blank spaces for the date and time of the hearing. Blank Dec'l Exh. A. Arteaga then appeared before an immigration judge ("IJ"). Blank Dec'l ¶ 6. The IJ ordered Arteaga removed and he was removed to Honduras on April 25, 1997. Id.

Arteaga then re-entered the United States and was again removed several more times. Id. Each of these subsequent removals was pursuant to a reinstatement of Mr. Arteaga's original 1997 removal order. Id.; Order Granting Motion to Dismiss at 2.

### B. Procedural Background

On July 18, 2018, Arteaga was indicted for one count of illegal reentry in violation of 8 U.S.C. § 1326. Indictment (Dkt. 1). Arteaga moved to dismiss the indictment. Motion to Dismiss. On January 8, 2019, this Court granted Arteaga's Motion to Dismiss, reasoning that, under Pereira v. Sessions, 138 S. Ct. 2105 (2018), the NTA that Arteaga received in his original removal proceedings was jurisdictionally invalid. Order Granting Motion to Dismiss.

Three days later, on January 11, 2019 the Government filed a Notice of Appeal of that Order. Notice of Appeal (Dkt. 40). A week later, on January 18, 2019 Arteaga filed a Motion for Release from Custody (Dkt. 41).

On January 28, 2019 the Ninth Circuit addressed the application of Pereira to when jurisdiction vests with an immigration judge ("IJ"), holding that "a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings . . . so long as a notice of hearing specifying this information is later sent to the alien." Karingithi v. Whitaker,

913 F.3d 1158, 1161 (9th Cir. 2019) (quoting Matter of Bermudez-Cota, 27 I. & N. Dec. at 447).

This Court held a hearing on Arteaga's Motion for Release from Custody on February 1, 2019 (Dkt. 47). At that hearing, the Government orally moved for reconsideration of this Court's Order Granting Defendant's Motion to Dismiss in light of Karingithi. See id.; Transcript of Hearing, Feb. 1, 2019 at 2:20-3:5 (U.S. Reply re Motion for Reconsideration Exh. 5) (Dkt. 87-6); see also Order Granting Motion to Dismiss. However, Arteaga argued that this Court lacked jurisdiction over this motion at that time, because the Government had already filed a Notice of Appeal as to that Order. Transcript of Hearing, Feb. 1, 2019 at 2:22-3:9; see also U.S. Notice of Appeal. The Government thus also orally sought an order under Federal Rule of Criminal Procedure 37(a) for indicative relief. See Transcript of Hearing, Feb. 1, 2019 at 2:22-3:9; Order on U.S. Rule 37 Motion.

The Court then issued an Order on the United States' Rule 37 Motion on February 4, 2019, holding that "if the Court of Appeals remanded this case for the purpose of deciding the Government's Motion for Reconsideration, the Court would determine that the Government's Motion raises a substantial issue because the Court's previous order dismissing Defendant's Indictment is incorrect under Karingithi, and the Court would instead have to apply the factors set out in 8 U.S. C. § 1326(d)." Order on U.S. Rule 37 Motion at 9. That same day, the Court also requested that the Government indicate to the Court its intentions regarding the indictment on or before February 6, 2019. Order Requesting Update as to Indictment (Dkt. 49).

The Government responded to this Court's request the next day, informing the Court that it had sought a remand from the Ninth Circuit under Federal Rule of Appellate Procedure 12.1. U.S. Resp. to Court's Request (Dkt. 50). It also informed the Court that "[s]hould this Court grant the Motion to Reconsider and reverse its dismissal, the United States will ask the Ninth Circuit to dismiss the appeal, so that the entirety of the case can proceed." Id.

The Court then, on February 6, 2019, granted Arteaga's Motion for Release from

3

1   Custody, and stayed his release until February 12, 2019. Order Granting Motion for

2   Release from Custody (Dkt. 52). Two days later, on February 8, 2019, the United States

3   informed this Court that it had filed for and received a voluntary dismissal before the Ninth

4   Circuit. Notice of Dismissal of Appeal (Dkt. 54); Order of USCA (Dkt. 65); see also C.A.

5   No. 19-10010 (Dkt. 6). That order stated, in full: "Appellant's motion for voluntary

6   dismissal of this appeal is granted (Docket Entry No. 5). This appeal is dismissed. See Fed.

7   R. App. P. 42(b). This order served on the district court shall act as and for the mandate of

8   this court." C.A. No. 19-10010 (Dkt. 6).

9         The Government also requested an extension of the stay of release until March 12,

10  2019, which Arteaga opposed. U.S. Motion for Extension of Stay (Dkt. 53). The Court

11  granted that Motion on February 11, 2019. Order Granting Motion for Extension of Stay

12  (Dkt. 55). The Court held a status conference the same day. Dkts. 56, 57. At that February

13  11, 2019 status conference, Arteaga argued that, because the Government had voluntarily

14  dismissed its appeal of the Court's Order Granting Defendant's Motion to Dismiss, instead

15  of waiting for the Ninth Circuit to rule on the merits of its appeal or its Rule 12.1 Motion,

16  this Court lacked jurisdiction over any further proceedings on the indictment. Feb. 11,

17  2019 Hearing Tr. (Dkt. 67). The Court asked the parties to return the following day. The

18  next day, prior to the hearing, the Government filed a Statement Regarding Jurisdiction

19  (Dkt. 68). At the hearing later that day, the Court held that the Ninth Circuit's dismissal

20  and mandate had restored this Court's jurisdiction. Dkt. 59; see also Def. Opp. to Mot. for

21  Reconsideration Exh. D. (Feb. 12, 2019 Hearing Tr.) (Dkt. 79-4).

22        Then, on February 22, 2019, the Government then filed its written Motion for

23  Reconsideration (Dkt. 69). Arteaga filed a Memorandum in Opposition (Dkt. 79) as well as

24  a petition for a writ of mandamus in the Ninth Circuit. Def. Notice of Filing of Petition for

25  Writ of Mandamus or Prohibition (Dkt. 73). Arteaga then sought a stay of the Motion for

26  Reconsideration "pending a decision on the petition for writ of mandamus and the

27  Karingithi petition for rehearing en banc." Def. Motion for Stay (Dkt. 80). Next, on March

28  8, 2019, the Ninth Circuit denied Arteaga's petition for a Writ of Mandamus. Order of

1 USCA re Petition for Writ of Mandamus (Dkt. 81). The Government then filed an
2 opposition to Arteaga's Motion to Stay. U.S. Opp. to Motion to Stay (Dkt. 86).

The parties then filed responsive and, with the Court's consent, see Order Granting Motion for Leave (Dkt. 92); Order Granting App. for Leave to File Add. Suppl. Br. (Dkt. 97), supplemental briefing on the Motion for Reconsideration. See U.S. Reply re Motion for Reconsideration (Dkt. 87); Def. Notice of Suppl. Authority re Opp. to Motion for Reconsideration (Dkt. 89); Def. Suppl. Br. (Dkt. 93); U.S. Suppl. Br. re Motion for Reconsideration (Dkt. 94); Def. Notice of Add. Suppl. Authority (Dkt. 95); Def. Second Suppl. Br. (Dkt. 98); U.S. Second Suppl. Br. (Dkt. 99).

The Court now addresses Arteaga's Motion to Stay and the Government's Motion for Reconsideration.

## II. DISCUSSION

There are two motions before the Court: (1) Arteaga's Motion for a Stay, and (2) the Government's Motion for Reconsideration. For the reasons that follow, the Court DENIES Arteaga's Motion for a Stay, and GRANTS the Government's Motion for Reconsideration.

### A. Motion for a Stay

Arteaga's Motion to Stay urged this Court to exercise its discretion to "stay proceedings on that motion pending a decision on the petition for writ of mandamus and the Karingithi petition for rehearing en banc." Motion for a Stay at 1.

The decision to issue a stay is within the discretion of the district court. Yong v. I.N.S., 208 F.3d 1116, 1119 (9th Cir. 2000). However, the Court's discretion is not entirely unbounded; the Ninth Circuit has counseled that the district court should "balance the length of the stay against the strength of the justification given for it." Id. In particular, it has cautioned that, while a court has an interest in conserving judicial resources, and that interest would be furthered by staying a case pending the resolution of a separate case that presents potentially controlling issues, that interest is insufficient to justify a stay if the

1 stay would cause a "lengthy" delay. Id.

Here, there is no basis on which to grant the stay. First, the Ninth Circuit has already summarily denied Arteaga's Petition for a Writ of Mandamus, see Order of USCA re Petition for Writ of Mandamus. There is thus no pending writ that would justify the stay. Second, though there has been a Petition for panel rehearing and rehearing en banc in Karingithi v. Barr, No. 16- 70885 (Dkt. 80), the Ninth Circuit's "en banc review may add months or even years to the shelf-life of a matter before this court." United States v. Hardesty, 958 F.2d 910, 917 (9th Cir.), on reh'g, 977 F.2d 1347 (9th Cir. 1992) (Alcaron, J., concurring in part and dissenting in part). In light of Yong's admonition that a stay that would terminate upon the resolution of an appeal in another case was an abuse of discretion, the Court DENIES Arteaga's Motion for a Stay.

### B. Motion for Reconsideration

The Court next turns to the Government's Motion for Reconsideration. At the threshold, Arteaga argues that the Court lacks jurisdiction to reconsider its previous dismissal order under (1) the Rule of Mandate, and (2) the thirty-day time limit for reconsideration. Def. Opp. to Motion for Reconsideration at 7. The parties also dispute whether Karingithi overruled the Court's reasoning in the Order Granting Motion to Dismiss. See id. at 12; U.S. Motion for Reconsideration at 3-4.

#### 1. Jurisdiction to Reconsider Dismissal Order

Arteaga sets forth two arguments that this Court lacks jurisdiction to reconsider its previous dismissal order. Neither is availing.

##### a. Rule of Mandate

Arteaga argues first that the Rule of Mandate forecloses reconsideration of the Order Granting the Motion to Dismiss. Def. Opp. at 7-9.

The rule of mandate doctrine imposes a jurisdictional requirement on courts. United States v. Thrasher, 483 F.3d 977, 982 (9th Cir. 2007). It obliges lower courts "to execute the terms of a mandate" set out by an appellate court. United States v. Kellington, 217 F.3d 1084, 1092 (9th Cir. 2000). And the lower court must do so "without variance or

examination, only execution." United States v. Garcia-Beltran, 443 F.3d 1126, 1130 (9th Cir. 2006). However, lower courts remain "free as to 'anything not foreclosed by the mandate.'" Kellington, 217 F.3d at 1092 (quoting Herrington v. County of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993)). Further, "the rule of mandate is designed to permit flexibility where necessary, not to prohibit it." Id. at 1095 n.12.

Arteaga contends that under the rule of mandate, "the Ninth Circuit's order granting the government's voluntary dismissal of its appeal precludes—as a jurisdictional matter— this Court from reconsidering its January 8 order dismissing the indictment." Def. Opp. at 9. The Ninth Circuit's order dismissing the Government's appeal, he urges, rendered this Court's Dismissal Order "final and binding." Id. at 8. That argument turns on Arteaga's reading of a Seventh Circuit case, United States v. One 1987 Mercedes Benz Roadster 560 SEC, VIN WDBBA48D3HA064462, 2 F.3d 241 (7th Cir. 1993). Def. Opp. at 8. Mercedes Benz Roadster is not binding. But even if it were, it is inapposite.

In Mercedes Benz Roadster, the Seventh Circuit affirmed a district court's dismissal of a forfeiture complaint against a car for lack of in rem jurisdiction. 2 F.3d at 242. The district court had "initially granted summary judgment in favor of the government," against an alleged owner of the car, JPM Industries. Id. JPM Industries moved to vacate that judgment and, on the basis of an intervening Court of Appeals decision that required the government to seek a "turnover order" in state court, the district court dismissed the forfeiture action. Id. (citing United States v. One 1979 Chevrolet C–20 Van, 924 F.2d 120 (7th Cir. 1991)). The Government filed a protective notice of appeal before the Seventh Circuit, then voluntarily dismissed it. Id. Then, two weeks later, the Government filed a new forfeiture action in federal court against the car. Id. at 243. The district court again found in favor of JPM Industries. Id. The Seventh Circuit then affirmed, reasoning that, because the government had failed to meet the requirement that it seek a turnover over thus "[n]othing that has occurred since the first dismissal changes [the] result [from the first case]." Id.

Mercedes Benz Roadster is inapposite to the case at bar because it did not involve

the rule of mandate; rather it held simply that "[b]ecause the government decided not to prosecute the appeal, it has accepted the district court's opinion as the law of the case . . . [t]he government may not simply decline to appeal a result adverse to it, ignore the resulting order, file an identical action, and expect to obtain a different result." Id. at 243-44. That is not the case here. In this action, the Government has not filed a new action against Arteaga, it has simply sought reconsideration of this Court's previous order. See Motion for Reconsideration.[1]

Moreover, nothing about the Ninth Circuit's order granting the Government's voluntary dismissal purported to resolve any issues. See Order of USCA (Dkt. 65). It merely dismissed the appeal. Id. The rule of mandate applies only what issues that were before the court and "disposed of by its decree." United States v. Thrasher, 483 F.3d 977, 981 (9th Cir. 2007) (quoting In re Sanford Fork & Tool Co., 160 U.S. 247, 255-56 (1895)). The order granting voluntary dismissal did not "dispose of" any issue. See Order of USCA (Dkt. 65). So there is nothing in the Ninth Circuit's order for this Court to execute "without variance or examination, only execution," Garcia-Beltran, 443 F.3d at 1130; see also Order of USCA (Dkt. 65). Lest there were any doubt, Arteaga has already advanced this precise argument before the Ninth Circuit in his petition for a writ of mandamus. See Def. Petition for a Writ of Mandamus at 15-32 (73-1). And the Ninth Circuit has summarily rejected it. Order of USCA (Dkt. 81). It would be odd indeed if the Ninth Circuit's order granting a voluntary dismissal bound this Court on matters of substance that that Court did not purport to reach, but the Ninth Circuit's order denying Arteaga's petition for failure to demonstrate that "this case warrants the intervention of this court by means of the extraordinary remedy of mandamus," Order of USCA (Dkt. 81), required this Court to accept the position advanced to and rejected by the Ninth Circuit.

Lastly, the "flexibility" of the doctrine of the rule of mandate would be undermined

---

[1] Arteaga's reliance on United States v. Pultrone, 241 F.3d 306 (3d Cir. 2001), is likewise misguided. Pultrone merely held that a court of appeal lacks jurisdiction to review arguments that a defendant did not raise in his initial appeal from his initial judgment of Conviction. Id. at 307-08.

8

if this Court took the rigid view that Arteaga urges, because his view would prevent this Court from revisiting its previous decisions when there has been an intervening change in the law and the appealing party sought to pursue and appeal before dismissing that appeal to seek reconsideration before the district court. See Kellington, 217 F.3d at 1095 n.12. Such a rigid view of the rule of mandate would unnecessarily expend judicial resources by forcing parties to continue to pursue an appeal instead of seeking reconsideration before the trial court in light of a change in the law.

The Court thus concludes that the Ninth Circuit's order granting voluntary dismissal does not invoke the rule of mandate.

### b. Thirty-Day Time Limit

Arteaga next argues that that, "notwithstanding the rule of mandate, the specific thirty-day jurisdictional time limit for hearing a motion to reconsider the Court's dismissal order of January 8, 2019, has passed." Def. Opp. at 9. He argues that, under 18 U.S.C. § 3731, that window expired on February 7, 2019. Id. at 12. Because the Government did not submit its written Motion for Reconsideration until March 8, 2019, he contends that it was untimely and thus this Court lacks jurisdiction to grant it. Id.; cf. Motion for Reconsideration.

18 U.S.C. § 3731 mandates that appeals "shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted." Id. Within that time, "[t]he district court has inherent jurisdiction . . . to modify its judgment for errors of fact or law or even to revoke a judgment." United States v. Villapudua-Perada, 896 F.2d 1154, 1156 (9th Cir. 1990). This includes the "reinstatement of an erroneously dismissed indictment." Id.; see also United States v. Rubio, 727 F.2d 786, 799 (9th Cir. 1983) (district courts' correction of erroneous orders are "treat[ed] as responses to motions for reconsideration, which are timely presented if 'filed within the original period for review.'" (quoting United States v. Jones, 608 F.2d 386, 390 (9th Cir. 1979)). The Ninth Circuit has thus held that "[b]ecause the time to appeal a dismissal of an indictment is thirty days, the time for the government to move for reconsideration of the dismissal is

9

also thirty days." Villapudua-Perada, 896 F.2d at 1156. Moreover, the Ninth Circuit has understood "the expiration of time for the government to appeal under 18 U.S.C. § 3731 as a jurisdictional limitation on the trial court after which a judgment can not be reconsidered." United States v. Foumai, 910 F.2d 617, 620 (9th Cir. 1990).

Under this rule, the Government thus had thirty days from the entry of this Court's Order Granting Motion to dismiss to file a motion for reconsideration. See Order Granting Motion to Dismiss. Arteaga is thus correct that the deadline expired February 7, 2019.

The problem with Arteaga's argument is that the Government did file the instant motion within that deadline. See U.S. Reply at 8. On February 1, 2019, the Government orally moved for leave to file a motion for reconsideration, which the Court granted. See Minute Order (Dkt. 47); Transcript of Hearing, Feb. 1, 2019 at 2:20-3:5; id. at 14:1-2. That the Government did not file its written motion until February 22, 2019 does not alter the fact that the Government orally filed the instant Motion prior to February 7, 2019.[2] The Court thus concludes that the Government's Motion for Reconsideration was timely filed, and thus the Court has jurisdiction over this Motion.

### 2. Merits

The Court turns now to the merits of the Government's Motion for Reconsideration. As this Court has previously explained in its Order on United States' Rule 37 Motion, though "the Federal Rules of Criminal Procedure do not explicitly contemplate motions for reconsideration, 'numerous circuit courts have held that motions for reconsideration may be filed in criminal cases.'" Order on U.S. Rule 37 Motion at 3 (quoting United States v. Mendez, 2008 WL 2561962, at *1 (C.D. Cal. June 25, 2008). Motions for reconsideration in criminal cases are therefore "governed by the rules that govern equivalent motions in civil proceedings." Id. (quoting Mendez, 2008 WL 2561962, at *2). So, in considering the

---

[2] To be sure, because there was an appeal pending when that Motion for Reconsideration was filed, the Court lacked jurisdiction over it. See Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). But Arteaga does not argue that because the Court lacked jurisdiction over the Motion, the Government was unable to file it. See generally Def. Opp.

10

Government's Motion, Federal Rule of Civil Procedure 60 applies. Id.; accord Phelps v. Alameida, 569 F.3d 1120, 1133 (9th Cir. 2009) (holding that motions for reconsideration brought under Rule 60(b) may be predicated on changes in the law underlying an earlier judgment).

As it did in its Rule 37 Motion, the Government argues that this Court's reasons for granting Arteaga's Motion to Dismiss are now foreclosed by Karingithi. U.S. Motion for Reconsideration a 1, 4-6; see also Order on U.S. Rule 37 Motion. The Court has already explained, in some detail, its position on this issue: Karingithi renders this Court's Order Granting Motion to Dismiss incorrect because that Order was predicated on a reading of Pereira v. Sessions, 138 S. Ct. 2105 (2018), that is now foreclosed by Karingithi. See Order on U.S> Rule 37 Motion. As the Court has already addressed these issues, the Court does not repeat its analysis here. The question is thus whether there is any basis on which to alter the conclusion set out in the Order on the United States' Rule 37 Motion.

Arteaga contends that Karingithi "is neither controlling nor precedential here because it fails to address key arguments raised by Mr. Arteaga's motion to dismiss." Def. Opp. at 12. For that position, he argues that the conclusion the Ninth Circuit reached in Karingithi is conflict with two Supreme Court cases, Michigan v. EPA, 135 S.Ct. 2699 (2015), and City of Arlington v. FCC, 569 U.S. 290 (2013). Def. Opp. at 12-14. He urges that Karingithi's conclusion contradicts the rules of administrative law interpretation set out in these two cases. Id. He also argues that Karingithi contains factual errors about the history of 8 U.S.C. § 1229, id. at 13-25, that Karingithi is not controlling because it failed to address "the interrelationship between the regulation and the statute," id. at 26, and that Karingithi runs afoul of Separation of Powers and the Non-Delegation Doctrine, id. at 27-29.

The problem, as the Government points out, is that these arguments do Arteaga no good before this Court. This Court is bound to follow the Ninth Circuit's precedent. See Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself

11

sitting en banc, or by the Supreme Court."). And the Ninth Circuit has held that "[a] notice to appear need not include time and date information to satisfy this standard." Karingithi, 913 F.3d at 1160. This Court cannot revisit that holding. Thus, Arteaga's arguments about the correctness of Karingithi have no persuasive value before this Court.

Arteaga next argues that Karingithi ought not apply here because this case is a criminal case and Karingithi was a civil immigration case. Def. Opp. at 29-31. But, as the Government observes, "Karingithi did not limit its reasoning or application to any particular type of case." U.S. reply at 13. Moreover, the dispute in the Motion to Dismiss hinged on the jurisdictional requirements imposed by the civil immigration regime; nothing about the Court's reasoning based on Pereira turned on the fact that this case is a criminal one. See generally Order Granting Motion to Dismiss.

Lastly, Arteaga has made the Court aware of several district court cases decided after Karingithi that, he argues, contain reasoning that should alter the Court's conclusion in the Order on the United States' Rule 37 Motion: United States v. Hernandez-Fuentes, 2019 WL 1487251 (E.D. Wash. 2019), United States v. Morales-Santiago, 2019 WL 1317719 (E.D. Wash. Mar. 22, 2019), and United States v. Ramos-Urias, 2019 WL 1567526, (N.D. Cal. April 8, 2019). See Def. Suppl. Authority; Def. Notice of Add. Suppl. Authority; cf. Order of U.S. Rule 37 Motion. The Court's conclusion is unchanged by these cases.

First, Ramos-Urias held that "[u]nder Karingithi and Bermudez-Cota, [27 I. & N. Dec. 441 (BIA 2018)], the failure of Mr. Ramos-Urias's NTA to include the date and time of the removal hearing did not deprive the Immigration Court of jurisdiction." 2019 WL 1567526 at *2. Ramos-Urias went on to determine that, for other reasons having to do with the lack of the address of the Immigration Court on the NTA. Id. at 3-7. But Arteaga did not raise that issue in his Motion to Dismiss, see generally Motion to Dismiss, and the Court did not address it in its Order Granting Motion to Dismiss, see generally Order Granting Motion to Dismiss. Thus, Ramos-Urias has no application here.

The Court is also unpersuaded by the other two cases, Hernandez-Fuentes and

12

Morales-Santiago. In these cases, the District Court for the Eastern District of Washington read Karingithi to hold that a "defective Notice to Appear can nonetheless vest jurisdiction with an immigration court, provided that date and time information is timely provided to the non-citizen through a Notice of Hearing," which Hernandez-Fuentes referred to as a "two-step process." Hernandez-Fuentes, 2019 WL 1487251, at *1-*2; accord Morales-Santiago, 2019 WL 1317719 at *4. The Court does not share the Eastern District of Washington's reading of Karingithi. As discussed in this Court's Rule 37 Order, Karingithi held that "the regulations, not § 1229(a), define when jurisdiction vests." Whitaker, 913 F.3d 1158, 1160 (9th Cir. 2019); see Order on U.S. Rule 37 Motion at 6-8. And those regulations, Karingithi observed, do "not include the time of the hearing." Karingithi, 913 F.3d at 1160. Nowhere did Karingithi mention a two-step process. See generally id.; see also Hernandez-Fuentes, 2019 WL 1487251, at *1; Morales-Santiago, 2019 WL 1317719, at *4.

Nor would reading such a requirement into the regulations comport with the reasoning of Karingithi. The regulations state that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court . . . . The charging document must include a certificate showing service on the opposing party pursuant to § 1003.32 which indicates the Immigration Court in which the charging document is filed." 8 C.F.R. § 1003.14. A "[c]harging document means the written instrument which initiates a proceeding before an Immigration Judge." Id. § 1003.13. And, for purposes of the regulations—and thus for purposes of an IJ's jurisdiction—an NTA must include:

> (1) The nature of the proceedings against the alien; (2) The legal authority under which the proceedings are conducted; (3) The acts or conduct alleged to be in violation of law; (4) The charges against the alien and the statutory provisions alleged to have been violated; (5) Notice that the alien may be represented . . . ; (6) The address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear; and (7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number . . .

13

8 C.F.R. § 1003.15(b). That list does not include a two-step notification process. See id.

So, because determinations of whether jurisdiction has vested with an IJ are made by looking at the regulations, Karingithi, 913 F.3d at 1160, and the regulations do not impose a two-step requirement, see 8 C.F.R. §§ 1003.13-15, the conclusion in Hernandez-Fuentes that jurisdiction can only vest when the Immigration Court later provides the noncitizen a Notice of Hearing with time and date information is unsupported by either the holding or reasoning of Karingithi. See Karingithi, 913 F.3d at 1160; see also Order on U.S. Rule 37 Motion at 7 n.7. The Court is therefore unpersuaded by Arteaga's reliance on Hernandez-Fuentes and Morales-Santiago: Karingithi did not "approve of" a two-step process. See Def. Suppl. Br. at 5; see also Karingithi, 913 F.3d at 1160; accord Matter of Bermudez-Cota, 27 I. & N. Dec. at 443. It held that the jurisdictional requirements for removal proceedings are determined in reference to the regulations. Karingithi, 913 F.3d at 1160; accord Matter of Bermudez-Cota, 27 I. & N. Dec. at 443. And those regulations do not require the inclusion of date and time information. See 8 C.F.R. §§ 1003.13-15. In fact, as Karingithi noted, "reading such a requirement [that NTAs include time and date information] into the regulations would render meaningless their command that such information need only be included 'where practicable.'" Karingithi, 913 F.3d at 1160 (quoting 8 C.F.R. § 1003.18(b)). The Court thus concludes that, under Karingithi, jurisdiction vested with an immigration court over Arteaga's removal proceedings when the NTA was filed.[3] So, the reason this Court gave in its Order Granting Motion to Dismiss no longer support dismissal. See Order Granting Motion to Dismiss at 2-9.

Thus, because Arteaga has offered no basis on which to deviate from the reasons set out in this Court's Order on the United States' Rule 37 Motion, and the Court is bound to

---

[3] Nor is the Court alone in reading Karingithi as it does. Numerous other courts, including other judges in this district, have rejected the argument that an NTA appear was jurisdictionally-insufficient because it lacked time and date information because, under Karingithi, only the regulations govern when jurisdiction vests. See, e.g., United States v. Mendoza, 2019 WL 1586774, at *3 (N.D. Cal. Apr. 12, 2019); United States v. Rosas-Ramirez, 2019 WL 1518162, at *1 (N.D. Cal. Apr. 8, 2019); United States v. Rubio-Alvarez, 2019 WL 1429267, at *1 (N.D. Cal. Mar. 29, 2019).

14

follow the Ninth Circuit's rulings, the Court thus concludes that, under <u>Karingithi</u>, this Court's Order Granting the Motion to Dismiss was incorrectly decided. <u>See</u> Order on U.S. Rule 37 Motion. The Court thus concludes that reconsideration is warranted.[4]

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Arteaga's Motion to Stay and GRANTS the Government's Motion for Reconsideration. The Court therefore VACATES the Order Granting Motion to Dismiss Indictment (Dkt. 35) and DENIES Arteaga's Motion to Dismiss Indictment (Dkt. 8).

**IT IS SO ORDERED.**

Dated: May 6, 2019

CHARLES R. BREYER
United States District Judge

---

[4] In his initial Motion to Dismiss, Arteaga also raised a number of arguments regarding the applicability of the factors set out in 8 U.S.C. § 1326(d). Motion to Dismiss at 11-15. While Arteaga's Opposition to the Motion for Reconsideration "incorporate[s] by reference" those arguments, Def. Opp. at 31, the Court agrees with the Government that "[g]iven that the Court did not reach the § 1326(d) factors in its order dismissing the indictment, a motion to reconsider the specific basis for that order is not the proper vehicle to address this collateral issue." U.S. Motion for Reconsideration at 6. Because those issues would be more properly the subject of a subsequent motion, the Court thus takes no view on these issues at this time.