IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE LUIS ARTEAGA-CENTENO,<br>Defendant. | Case No. 18-cr-00332-CRB-1<br><br>**ORDER DENYING SECOND MOTION TO DISMISS** |

Defendant Jose Luis Arteaga-Centeno has filed a Second Motion to Dismiss (Dkt. 108) urging this Court to dismiss the sole count in the indictment against him, illegal reentry of a removed noncitizen in violation of 8 U.S.C. §§ 1326(a), (b)(2).[1] Second Mot. to Dismiss; see also Indictment (Dkt. 1). This Motion to Dismiss presents a difficult question of law for which there is no controlling Ninth Circuit precedent. While the Court determines that dismissal of the indictment is not called for, it also acknowledges that reasonable minds may differ as to the application of the law at issue here. The Court is therefore eager for the guidance of the Ninth Circuit on this issue.

The Court DENIES Arteaga's Motion to Dismiss.

## I. BACKGROUND

Before addressing the complex legal issues presented in this case, the Court first explains the relevant factual and procedural issues.

---

[1] As the Supreme Court did in Pereira v. Sessions, 138 S. Ct. 2105 (2018), this Court uses the term "noncitizen," rather than "alien," to "refer to any person who is not a citizen or national of the United States." Id. at 2110 n.1.

### A. Factual Background

Arteaga, a native of Honduras, first entered the United States without inspection in 1996. Blank Decl. (Dkt. 9) ¶ 2. In 1997, he was convicted of possession crack cocaine for sale in California state court. Id. Thereafter, he entered removal proceedings. Id.

The government issued a Notice to Appear ("NTA") to Arteaga in April 1997. Lucas Dec'l Exh. 3 (Dkt. 11-1). That NTA contained blank spaces for the date and time of the hearing and for the "[c]omplete Address of Immigration Court, Including Room Number, if any." Id. The date and time spaces were left blank, and the location blank was completed with the typed statement "[t]o be calendared and notice provided by the Office of the Immigration Judge." Id. The NTA also contained Arteaga's signature, an INS officer's signature, and the date, April 17, 1997. Id. It further contained an "X" in a box indicating that the NTA was served on Arteaga in person, a box next to the sentence, "[a]ttached is a list of organizations and attorneys which provide free legal services," and a box indicating that the noncitizen "was provided oral notice in the Spanish language of the time and place of his or her hearing and the consequences of failure to appear[.]" Id.

On the same day that Arteaga signed the NTA, April 17, 1997, he also signed a document titled "Notice of Rights and Request for Disposition." Id. Exh. 4. That documents contains three statements:

> [1] I request a hearing before the Immigration Court to determine whether or not I may remain in the United States.
> [2] I request a hearing before the Immigration Court to determine whether or not I may remain in the United States.
> [3] I admit that I am in the United States illegally, and I believe I do not face harm if I return to my country. I give up my right to a hearing before the Immigration Court. I wish to return to my country as soon as arrangements can be made to effect my departure. I understand that I may be held in detention until my departure.

Id. The first and second statements had initials next to them and an unchecked box. Id. The third statement had no initial, but had an "X" in the box next to it. Id. Arteaga's signature and the date, April 17, 1997, appeared below those statements. Id. Below that signature line was a checked box by the statement, "[n]otice read to subject by Mario Huelga, in the Spanish language," along with Huelga's signature and the date, April 17, 1997. Id.

In his declaration, Arteaga recalls that the above-described documents "were not translated line by line into the Spanish language for [Arteaga]. Instead, the agent summarized what the documents purportedly said. When the agent showed these documents to [him], they already contained 'x' marks in various boxes. The agent told [Arteaga] where to sign [his] name." Arteaga Dec'l ¶ 5 (Dkt. 18). He further states that, regarding the NTA, his "understanding was that signing this document would result in a prompt hearing before a court with the authority to decide whether to deport [Arteaga] or let [him] remain in the country. [He] was not advised that the court lacked jurisdiction over [his] case or that by signing the document [he] would later give up [his] right to claim that the court lacked jurisdiction." Id. ¶ 5. Further, he states that, contrary to the "X" indicating that Arteaga was provided a list of attorneys who provide free legal services, see Lucas Dec'l Exh. 3, he does not recall receiving any such list. Arteaga Dec'l ¶ 7.

Mario Huelga, the INS agent whose signature appears on the two above-described forms, submitted a declaration on behalf of the Government. Huelga Dec'l (Dkt. 21). He states that he has no "specific or general recollection of any interactions" with Arteaga, but that he recognizes his signature on the NTA and the Notice of Rights. Id. ¶¶ 3-4. He states that during this period it was his practice to "advise the [noncitizen] of the information in the Notice of Rights, including that he was arrested because he was believed to be in the U.S. illegally, that he had a right to fight his case at a hearing before the Immigration Judge, a right to an attorney, and a right to contact the consulate of his country of origin," then ask the noncitizen whether "he would like to fight his case or whether he would rather be deported as soon as possible." Id. ¶¶ 6-7. Then, "[d]epending on the answer, it was [Huelga's] general practice to either mark, or have the [noncitizen] mark, one of the three boxes in the Request for Disposition." Id. ¶ 7.

Arteaga then appeared before an immigration judge ("IJ"). Arteaga Dec'l ¶ 9. Arteaga recalls that:

> There was a lawyer there in the courtroom. I do not remember if I ever heard his name. I do not believe that the judge asked me if I was represented by the lawyer or if I wanted to be

3

> represented by him. I do not believe that I ever signed anything accepting his representation of me. I did not contact any lawyer prior to the hearing, and I do not recall meeting with any lawyer prior to the hearing. I did not discuss my case or my rights with any lawyer and, to the best of my recollection, the lawyer at the hearing that day was simply there when I arrived at the court. I did not knowingly authorize the lawyer to waive any rights that I might have to stay in the country, and the lawyer never talked to me about any rights I might have to stay in the country.

Id.

Huelga recalls that it was his "general observation that a pro bono attorney would be present in the courtroom [during immigration court proceedings]. It was [his] observation that, prior to the [noncitizen's] removal hearing, the pro bono attorney would meet with the [noncitizen]." Huelga Dec'l ¶ 12.

Arteaga's current attorney attests that, having listened to the recording of Arteaga's hearing before the IJ:

> [T]he immigration judge asked the one attorney who is present in court, purporting to represent all the respondents at the hearing that morning, to state his appearance. The attorney's response is not audible. However, throughout the hearing, the immigration judge can be clearly heard addressing that attorney as 'Mr. Guajardo.' That lawyer purported to waiver each and every right of each and every respondent in court that morning. That recording also demonstrates that the discussion between the judge and the lawyer regarding the waiver of Mr. Arteaga's right to appeal was not translated into Spanish.

Blank Suppl. Dec'l ¶ 2 (Dkt. 19); see also Blank Dec'l ¶ 6 ("Some but not all of the IJ's statements were translated into Spanish."). Despite the attorney's statement in the hearing, Arteaga's immigration file "does not include the necessary form for any lawyer to have filed in order to appear in court on behalf of Mr. Arteaga." Blank Dec'l ¶ 6.[2]

---

[2] Blank further states that a search of the State Bar of California's online database reveals that there was only one attorney with the last name "Guajardo" licensed in California at the time of Arteaga's 1997 hearing. Blank Suppl. Dec'l ¶ 3. He thus concludes that, based on the use of the name "Guajardo" in the hearing and that database search, it is his belief that the attorney who appeared at Arteaga's 1997 hearing was Martin Resendez Guajardo. Id. ¶¶ 3-6. Blank further provides that Martin Resendez Guajardo faced discipline, including suspension, and resigned from the bar. Id. ¶ 4. Martin Resendez Guajardo was also sued by the City Attorney of San Francisco for, according to a City Attorney press release, "running an illicit immigration law practice that for more than two years defrauded clients and devastated the lives of the immigrants and family members who sought his counsel." Id. ¶ 5. That press release described Martin Resendez Guajardo as "one of San Francisco's most notorious predators." Id. The Government states that it cannot

4

The IJ ordered Arteaga removed, Blank Dec'l ¶ 6, and Arteaga was removed on April 25, 1997. Arteaga then re-entered the United States and was again removed in 1998, 2001, 2006, and 2012. Id. Each of these subsequent removals was pursuant to a reinstatement of Mr. Arteaga's original 1997 removal order. Id. The Government also contends that he was also removed in 1997 under the name "Carlos Dorre-Rodriguez," based on fingerprint matching, and similarities in background information. Opp. at 5; Lucas Dec'l Exhs. 10, 11. Arteaga responds that the Government has not averred how reliable these fingerprint analyses are and thus contends that it is unclear whether Dorre-Rodriguez is, in fact, Arteaga. Second Mot. to Dismiss at 7 n.4.

### B. Relevant Procedural Background

In July 2018, Arteaga was indicted for one count of illegal reentry in violation of 8 U.S.C. § 1326. Indictment. Arteaga moved to dismiss the indictment. First Mot. to Dismiss (Dkt. 8). On January 8, 2019, this Court granted Arteaga's First Motion to Dismiss, reasoning that, under Pereira v. Sessions, 138 S. Ct. 2105 (2018), the NTA that Arteaga received in his original removal proceedings was jurisdictionally invalid because that NTA lacked time and date information. Order Granting First Mot. to Dismiss (Dkt. 35).

On January 28, 2019, the Ninth Circuit addressed the application of Pereira to when jurisdiction vests with an IJ, holding that "a notice to appear that does not specify the time and place of [a noncitizen]'s initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings . . . so long as a notice of hearing specifying this information is later sent to the [noncitizen]." Karingithi v. Whitaker, 913 F.3d 1158, 1161 (9th Cir. 2019) (quoting Matter of Bermudez-Cota, 27 I. & N. Dec. at 447).

In light of Karingithi, this Court then granted the Government's Rule 37 Motion, holding that if the Ninth Circuit remanded this case, the Court would determine that a Motion for Reconsideration raised a substantial issue. Order on United States' Rule 37 Motion (Dkt. 48).

---

"confirm or deny this claim." Opp. to Second Mot. to Dismiss at 18 n.15.

5

The Government sought and received voluntary dismissal of its appeal from the Ninth Circuit, Notice of Dismissal of Appeal (Dkt. 54); Order of USCA (Dkt. 65), then filed its Motion for Reconsideration (Dkt. 69) before this Court. In light of Karingithi, this Court granted that Motion and denied Arteaga's First Motion to Dismiss. Order Granting Motion for Reconsideration and Denying First Motion to Dismiss (Dkt. 100). However, that Order acknowledged that the First Motion to Dismiss had raised arguments that the Court had not reached in its Order Granting First Motion to Dismiss regarding the applicability of the factors set out in 8 U.S.C. § 1326(d). Order Granting Motion for Reconsideration and Denying First Motion to Dismiss at 15 n.4. The Court observed that, "[b]ecause those issues would be more properly the subject of a subsequent motion, the Court thus takes no view on these issues at this time." Id.; see also First Mot. to Dismiss at 11-15. Arteaga has now filed a Second Motion to Dismiss. The Court held a hearing on this Motion on July 10, 2019.[3]

## II. DISCUSSION

Arteaga is charged with violating 8 U.S.C. § 1326. Indictment. In general, a noncitizen "may not challenge the validity of the deportation order . . . unless the [noncitizen] demonstrates that—(1) the [noncitizen] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the [noncitizen] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). However, as this Court has previously observed, "[i]f the underlying removal was jurisdictionally void, then there has been, for the purposes of § 1326(a), no removal at all," and an indictment based on such a removal may be dismissed, because "there is no removal order to be collaterally attacked." Order Granting First Mot. to

---

[3] At the hearing on this Motion, the Court also heard argument on Arteaga's separate Motion for Release from Custody Under the Due Process Clause (Dkt. 109). The Court referred that Motion to a Magistrate Judge for determination. Minute Entry July 10, 2019 (Dkt. 115).

Dismiss at 8-9 (citing Noriega-Lopez v. Ashcroft, 335 F.3d 874, 884 (9th Cir. 2003)).

As with the First Motion to Dismiss, Arteaga's Second Motion to Dismiss is targeted at his initial removal in 1997. See generally Second Mot. to Dismiss; accord First Mot. to Dismiss. He levels two arguments: (1) that the NTA he received in 1997 was jurisdictionally void, and thus invalid, because it lacked the address of the Immigration Court; (2) and that, alternatively, that he satisfies the requirements of § 1326(d). Second Mot. to Dismiss at 8.

Though the answer is far from clear, the Court holds that the deficiency in Arteaga's 1997 NTA did not prevent jurisdiction from vesting with the Immigration Court because the regulation that Arteaga's 1997 NTA violated was not jurisdictional. It further concludes that Arteaga is unable to meet the requirements of 8 U.S.C. § 1326(d) because he cannot show that he was prejudiced, and thus cannot demonstrate that the proceedings were fundamentally unfair. See 8 U.S.C. § 1326(d)(3).[4]

### A. Jurisdictional Validity of Arteaga's Notice to Appear

Arteaga's first argument is that because his 1997 NTA did not include the address of the Immigration Court, in violation of 8 C.F.R. § 1003.15(b)(6), jurisdiction never vested in the Immigration Court, and thus his original removal was jurisdictionally void. Second Mot. to Dismiss at 8-13. He thus urges this Court to dismiss the indictment. Id. Though this question is close, the Court holds that the requirement that an NTA include the address of the Immigration Court is not a jurisdictional one, and thus the failure of the NTA that Arteaga received to include the Immigration Court's address did not prevent jurisdiction from vesting with the IJ.

#### 1. Regulatory Framework and Karingithi

Under the regulations governing immigration courts, "[j]urisdiction vests, and

---

[4] Arteaga also preserves through incorporation by reference his arguments in favor of dismissal that this Court rejected in its Order Granting Motion for Reconsideration. Second Mot. to Dismiss at 1 n.1. The Court again rejects those arguments for the reasons stated in that previous order. See Order Granting Motion for Reconsideration and Denying First Motion to Dismiss.

7

proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). Karingithi made clear that it is this "regulatory definition . . . [that] governs the Immigration Court's jurisdiction." 913 F.3d at 1160.

Another regulation, § 1003.13, defines "[c]harging document" as "the written instrument which initiates a proceeding before an Immigration Judge . . . . these documents include a Notice to Appear[.]" Id. § 1003.13; see also Karingithi, 913 F.3d at 1159–60 ("A charging document is 'the written instrument which initiates a proceeding before an Immigration Judge,' and one of the enumerated examples is a notice to appear." (quoting 8 C.F.R. § 1003.13)).

A third regulation, § 1003.15, states that, among other requirements, an NTA must include "[t]he address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear." 8 C.F.R. § 1003.15(b)(6); see also Karingithi, 913 F.3d at 1160.

Finally, a fourth regulation, § 1003.18 states that "[i]n removal . . . the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable." 8 C.F.R. § 1003.18(b).[5]

In Karingithi, the Ninth Circuit "consider[ed] whether the Immigration Court has jurisdiction over removal proceedings when the initial notice to appear does not specify the time and date of the proceedings, but later notices of hearing include that information." 913 F.3d at 1158. The issue arose because the Supreme Court recently decided that if the Government issues a noncitizen an NTA, as defined in 8 U.S.C. § 1229(a)—which does not require an NTA to include the time and place of the removal hearing, 8 U.S.C. § 1229(a)(G)(i)—that service does not trigger the "stop-time" rule under 8 U.S.C. § 1229b(d)(1). Pereira v. Sessions, 138 S. Ct. 2105, 2110 (2018). Both § 1229(a) and the

---

[5] "Service" is defined as "physically presenting or mailing a document to the appropriate party or parties . . . a Notice to Appear or Notice of Removal Hearing shall be served to the [noncitizen] in person, or if personal service is not practicable, shall be served by regular mail to the [noncitizen]or the [noncitizen's] attorney of record." 8 C.F.R. § 1003.13.

8

above-described regulations define "notice to appear." So, after Pereira, there was an open question whether the definition of an NTA in 8 U.S.C. § 1229(a) applied to 8 C.F.R. §§ 1003.13-.14's requirements that "[j]urisdiction vests" when an NTA is filed. That mattered because § 1229(a) and 8 C.F.R. §§ 1003.13-.14 impose different requirements on an NTA. Compare 8 U.S.C. § 1229(a) with 8 C.F.R. §§ 1003.13-.18.

Karingithi held that Pereira does not control whether an NTA that lacks the information required in § 1229(a) could vest jurisdiction in an Immigration Court because Pereira "never references 8 C.F.R. §§ 1003.13, 1003.14, or 1003.15, nor does the word 'jurisdiction' appear in the majority opinion." Karingithi, 913 F.3d at 1161. So, Karingithi held, the regulations, not the statute, "define when jurisdiction vests" in an immigration court. 913 F.3d at 1160. And under those regulations, "[a] notice to appear need not include time and date information to satisfy this standard," because those are not listed requirements in those regulations. Id.

Karingithi did not resolve, however, which requirements set out in the regulations are jurisdictional. See id. So, after Karingithi, if an NTA lacks the information specified in § 1003.15, does that NTA vest jurisdiction with the Immigration Court?

This case squarely presents that question. Arteaga's 1997 NTA's space for "[c]omplete Address of Immigration Court, Including Room Number, if any" was completed with the typed statement "[t]o be calendared and notice provided by the Office of the Immigration Judge." Lucas Dec'l Exh. 3. It thus lacked information § 1003.15(b)(6) requires—that the NTA include "[t]he address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear," 8 C.F.R. § 1003.15(b)(6).

### 2. Analysis

Arteaga argues that because his 1997 NTA failed to provide "[t]he address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear," 8 C.F.R. § 1003.15(b)(6), jurisdiction never vested with the IJ and thus dismissal of the indictment is warranted without the need to consider the § 1326(d) factors. Second

9

Mot. to Dismiss at 8.

Arteaga relies primarily on Karingithi and a recent order by another court in this District which, after Karingithi, denied the Government's motion for reconsideration of an order granting the defendant's motion to dismiss. See United States v. Ramos-Urias, 2019 WL 1567526 at *3 (N.D. Cal. Apr. 8, 2019); Second Mot. to Dismiss at 8-13.[6] Like Arteaga's NTA, the NTA at issue in Ramos-Urias did not comply with 8 C.F.R. § 1003.15(b)(6). Id. (quoting 8 C.F.R. § 1003.15(b)(6)). Without that information, Ramos-Urias concluded, the NTA "did not comply with the requirements that govern the Immigration Court's jurisdiction." Id. at *2. In support of that conclusion, Ramos-Urias noted that some subsections of § 1003.15 contained a disclaimer that "[f]ailure to provide any of these items shall not be construed as affording the [noncitizen] any substantive or procedural rights," 8 C.F.R. §§ 1003.15(a), (c), but that § 1003.15(b) contains no such disclaimer, id. § 1003.15(b); see also Ramos-Urias, 2019 WL 1567526 at 82. Ramos-Urias concluded that "the absence of the disclaimer in subsection (b) is significant" because:

> Drafters of regulations and statutes are presumed to choose their words with precision . . . . That regulators chose to impose the disclaimer on categories of information described in subsections (a) and (c) but not on subsection (b) indicates that the requirements of subsection (b) should be treated differently than the requirements of subsections (a) and (c). The fact that this regulation's drafters omitted the disclaimer for the contents itemized in subsection (b) suggests to the Court that the drafters intended subsection (b) to provide [a noncitizen] with substantive and procedural rights.

Id. (citing N.L.R.B. v. SW Gen., Inc., 137 S. Ct. 929, 940 (2017)). Arteaga urges this Court to adopt that reasoning here. Second Mot. to Dismiss at 8-13.

The Government responds that "the regulation that contains the jurisdictional definition does not require an NTA to include the address of the immigration court for

---

[6] In the Order Granting Motion for Reconsideration, this Court acknowledged the holding of Ramos-Urias but did not engage with its reasoning because "Arteaga did not raise [the issue of the absence of the Immigration Court's address] in his [First] Motion to Dismiss . . . and the Court did not address it in its Order Granting Motion to Dismiss." Order Granting Motion for Reconsideration and Denying First Motion to Dismiss at 12.

10

jurisdiction to vest." Opp. to Second Mot. to Dismiss at 6, see also id. at 13-15.[7] That is so, it urges, because § 1003.14(a) "states only that '[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court.'" Id. at 13 (quoting 8 C.F.R. § 1003.14(a)) "It does not say 'what information must be contained in a 'charging document' at the time it is filed.'" Id. (Hernandez-Perez v. Whitaker, 911 F.3d 305, 314 (6th Cir. 2018)). It further argues that § 1003.15, which states what an NTA must include, does not state that those requirements are jurisdictional. Opp. to Second Mot. to Dismiss at 14; 8 C.F.R. § 1003.15.[8] It urges this Court to conclude that § 1003.15(b) does not impose jurisdictional requirements on an NTA.

Whether an NTA that lacks the information set out in § 1003.15(b) may properly vest jurisdiction with an immigration judge is a difficult question, made more difficult by the fact that there are no Ninth Circuit cases directly addressing this question. And what cases there are on similar points yield no clear conclusion. Cf. Karingithi, 913 F.3d at 1158-60; Kohli v. Gonzales, 473 F.3d 1061, 1066 (9th Cir. 2007).

---

[7] The Government has also argued that the word "jurisdictional," as used in 8 C.F.R. § 1003.14, does not carry the meaning that "jurisdiction" usually carries. Opp. to Second Mot. to Dismiss at 8. Though the Court observes that Karingithi's analysis of the jurisdictional requirements of § 1003.15 implies that "jurisdiction" carries its ordinary meaning, see Karingithi, 913 F.3d at 1159-62, because the Court concludes that § 1003.15 does not impose jurisdictional requirements, it need not address definitively whether to read some novel understanding into the word "jurisdictional" as used in § 1003.14(a).

[8] The parties also dispute, in some length, the import of 8 C.F.R. § 1003.18. The Government argues that § 1003.18 "confirm[s] that the rule requiring an NTA to specify the immigration court's address is not jurisdictional" because that regulation requires an NTA to include "time, place, and date" information only "where practicable." Opp. to Second Mot. to Dismiss at 14-15; 8 C.F.R. § 1003.18(b). Arteaga responds that § 1003.18 has no bearing on whether the requirements of § 1003.15 are jurisdictional, because the "place" referred to in § 1003.18 may be an entirely different from the address required by § 1003.15(b)(6). Reply re Second Mot. to Dismiss at 4-5.

The Court agrees with Arteaga that there is no reason to read the "place" of the hearing in § 1003.18(b) as synonymous with the address requirement in § 1003.15(b)(6). The Government's reading would create a conflict in the regulations—the date would both be something that "must" be included, 8 C.F.R. § 1003.18(b), but also something that need only be included "where practicable." Id. § 1003.15(b). Moreover, as Arteaga points out, "the 'place' of the initial removal hearing . . . need not be the same as the 'address' of the court where the NTA will be filed required under § 1003.15(b)(6)." Reply re Second Mot. to Dismiss at 5; see also Second Mot. to Dismiss Exh. A (Department of Justice practice manual). The Court therefore concludes that because the two regulations address different information, the permissive language of § 1003.18(b) has no bearing on whether § 1003.15(b) imposes jurisdictional requirements.

11

On one hand, Kohli held that "[s]ection 1003.14 requires a certificate showing service, but does not suggest that there are any other jurisdictional requirements." 473 F.3d at 1066; see also 8 C.F.R. § 1003.14(a) ("The charging document must include a certificate showing service on the opposing party pursuant to § 1003.32 [which controls service and size of documents] which indicates the Immigration Court in which the charging document is filed."). Kohli, thus, suggests that the only jurisdictional requirement for a charging document is that it show service, and that regulations other than § 1003.14 are not jurisdictional. See Kohli, 473 F.3d at 1066.

On the other hand, Karingithi held that "jurisdiction vests in the Immigration Court when a charging document, such as a notice to appear, is filed," and that [t]he regulations specify the information a notice to appear must contain," citing to 8 C.F.R. § 1003.15(b) in so holding. 913 F.3d at 1158-59 (citing 8 C.F.R. § 1003.15(b)); id. at 1160. And § 1003.15(b), as discussed above, requires that "[t]he Order to Show Cause and Notice to Appear must include . . . . [t]he address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear." 8 C.F.R. § 1003.15(b)(6). So, Karingithi can be read to suggest that an NTA must include the information set out in § 1003.15(b), and thus, because an NTA is necessary for jurisdiction to vest, that jurisdiction only vests when the requirements § 1003.15(b) for an NTA are met. See Karingithi, 913 F.3d at 1158-60.

Despite this possible tension between Kohli and Karingithi, this Court may still "harmonize these conflicting strains of precedent," Olagues v. Russoniello, 770 F.2d 791, 797 (9th Cir. 1985). Karingithi states that "[t]he regulations specify the information a notice to appear must contain." 913 F.3d at 1158-59 (citing 8 C.F.R. § 1003.15). But that statement is distinct from Karingithi's prior statement that an Immigration Court's jurisdiction "is governed by federal immigration regulations, which provide that jurisdiction vests in the Immigration Court when a charging document, such as a notice to appear, is filed," which cites only to 8 C.F.R. §§ 1003.13-14, not to § 1003.15. Karingithi, 913 F.3d at 1158 (citing 8 C.F.R. §§ 1003.13-14). That matters because it suggests a

12

distinction between the jurisdictional provisions of the regulations, see 8 C.F.R. §§ 1003.13-.14, and a non-jurisdictional provision, id. § 1003.15. See Karingithi, 913 F.3d at 1158-59. Karingithi, then, suggests that the jurisdictional provisions of the regulations are limited to §§ 1003.13-14. See Karingithi, 913 F.3d at 1158-59. This reading harmonizes Karingithi with Kohli's statement that "[s]ection 1003.14 requires a certificate showing service, but does not suggest that there are any other jurisdictional requirements," for instance, the requirements set out in § 1003.15. See Kohli, 473 F.3d at 1066. So, in light of Karingithi and Kohli, the Court understands § 1003.15(b)'s requirements as non-jurisdictional. In consequence, an NTA that lacks the information required by § 1003.15(b) may still vest an IJ with jurisdiction. See 8 C.F.R. § 1003.14(a).

The Court is also unpersuaded by Arteaga's argument, relying on Ramos-Urias, that the "absence of [a] disclaimer" in § 1003.15(b) is of jurisdictional import. See Second Mot. to Dismiss at 11-12; Ramos-Urias, 2019 WL 1567526 at *2. It is true that § 1003.15(b), unlike §§ 1003.15(a) and (c), lacks a statement indicating that the failure of an NTA to provide the information set out in the subsection does not provide the noncitizen "any substantive or procedural rights." 8 C.F.R. §§ 1003.15(a), (c). But the absence of a disclaimer, while possibly providing avenues for a noncitizen to challenge an NTA in some manner, does not support the conclusion that the failure to include that information creates a jurisdictional problem. To the contrary, if an "order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it." Wilson v. Carr, 41 F.2d 704, 706 (9th Cir. 1930). And so if an error under § 1003.15(b) prevented jurisdiction from vesting with an IJ, there would be no order to challenge, either substantively or procedurally. Cf. 8 C.F.R. § 1003.15; see also Second Mot. to Dismiss at 8-13. So, while there may be ways for a noncitizen who receives an NTA that lacks information required by § 1003.15(b) to challenge that absence, that does not render the error jurisdictional.

Thus, because § 1003.15 does not impose jurisdictional requirements, an NTA that lacks information required by § 1003.15 does not preclude jurisdiction from vesting with

13

the IJ. See Karingithi, 913 .3d at 1158-59; Kohli, 473 F.3d at 1066; 8 C.F.R. §§ 100.3.13-15. Arteaga's argument that his NTA was jurisdictionally invalid because it lacked information required by § 1003.15 therefore fails. See Second Mot. to Dismiss at 8-13. And, in consequence, his argument that his Indictment should be dismissed for the jurisdictional error "without regard to the § 1326(d) factors" for jurisdictional error also fails. See id. at 13.

### B. Relief Under 8 U.S.C. § 1326(d)

In the alternative, Arteaga argues that he is still entitled to dismissal of the instant indictment because he satisfies the requirements for a collateral attack on his underlying deportation order under 8 U.S.C. § 1326(d). Second Mot. to Dismiss at 19-20. That provision provides that to challenge an underlying removal order in a criminal case alleging illegal reentry, the noncitizen must demonstrate that he "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the [noncitizen] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). The parties agree that one requirement of the third prong, fundamental fairness, is that the noncitizen show that he was prejudiced by the error. Second Mot. to Dismiss at 18; Opp. to Second Mot. to Dismiss at 21-24; Reply re Second Mot. to Dismiss at 7; see also United States v. Alvarado-Pineda, 774 F.3d 1198, 1201 (9th Cir. 2014) ("An underlying order is 'fundamentally unfair' if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." (citation omitted)). So, to meet the requirements of 8 U.S.C. § 1326(d), Arteaga needs to demonstrate that he was prejudiced. Because he cannot do so, the Court need not address the other requirements of § 1326(d). See Alvarado-Pineda, 774 F.3d at 1203.

Arteaga's sole argument on prejudice is that "he was prejudiced by his removal here, regardless of whether he had plausible grounds for relief from removal, because the

removal was on the basis of an order from a court that lacked jurisdiction." Reply re Second Mot. to Dismiss at 7; see also Second Mot. to Dismiss at 19-20. Because, as discussed above, the IJ did not lack jurisdiction over Arteaga's removal hearing based on his NTA's failure to include the information required by 8 C.F.R. § 1003.15(b)(6), this argument fails. Nor does Arteaga offer any other basis for concluding that he was prejudiced within the meaning of 8 U.S.C. § 1326(d)(3). See generally Second Mot. to Dismiss; Reply re Second Mot. to Dismiss.[9] Arteaga therefore does not satisfy 8 U.S.C. § 1326(d).

I. **CONCLUSION**

For the foregoing reasons, Arteaga's Second Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: July 16, 2019

CHARLES R. BREYER
United States District Judge

---

[9] At the hearing on this Motion, Arteaga urged the Court to make a factual finding as to whether Arteaga was represented by an attorney at the hearing before the IJ. See Minute Entry, July 10, 2019 (Dkt. 115); see also Reply re Second Mot. to Dismiss at 1-3. But while Arteaga argues that he was not represented, and that this lack of representation satisfies the requirements of 8 U.S.C. §§ 1326(d)(1)-(2), see Second Mot. to Dismiss at 16-17, he does not argue that it satisfies the prejudice requirement of § 1326(d)(3). See Second Mot. to Dismiss at 18-20; Reply at 3-6. Because the Court need not express any view on whether Arteaga satisfied §§ 1326(d)(1)-(2), the Court needs not resolve the factual dispute over whether Arteaga was represented by counsel in his 1997 removal hearing.

15